KUTY v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 77198. Submitted October 11, 1984, at Detroit.—Decided
January 23, 1985. Leave to appeal applied for.

Plaintiff, Edward W. Kuty, brought an action in the Wayne
Circuit Court against defendant, Detroit Automobile Inter-In-
surance Exchange. Plaintiff suffered an injury to his eye in a
work-related automobile accident. Plaintiff recovered an award
of specific-loss benefits from the Bureau of Workers' Disability
Compensation. Plaintiff sought no-fault benefits from defen-
dant. The court, Michael L. Stacey, J., granted partial sum-
mary judgment for defendant, holding that the specific-loss
benefits must be set off against a recovery of wage-loss benefits
from defendant. Plaintiff appealed. *Held:*

Scheduled specific-loss benefits under the Worker's Disability
Compensation Act shall be set off against no-fault work-loss
benefits.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — REDUCTION OF BENEFITS.

Benefits provided or required to be provided under the laws of
any state or the federal government shall be deducted from
personal protection insurance benefits otherwise payable for an
injury incurred in a motor vehicle accident where they serve
the same purpose as the personal protection benefits and are
provided or are required to be provided as a result of the same
accident (MCL 500.3109[1]; MSA 24.13109[1]).

2. INSURANCE — NO-FAULT INSURANCE — WORKERS' COMPENSATION —
SPECIFIC-LOSS BENEFITS — WAGE-LOSS BENEFITS — SETOFF.

Scheduled specific-loss benefits under the Worker's Disability

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobile Insurance § 368.

Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

[2] 7 Am Jur 2d, Automobile Insurance § 361.

82 Am Jur 2d, Workmen's Compensation § 341.

Compensation Act shall be set off against no-fault wage-loss benefits (MCL 418.361; 500.3107; 500.3109[1]; MSA 17.237[361]; 24.13107; 24.13109[1]).

*Charles G. Gale,* for plaintiff.

*Dickinson, Brandt, Hanlon, Becker & Lanctot* (by *Charles T. McCutcheon, Jr.),* and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh),* of counsel, for defendant.

Before: HOOD, P.J., and BEASLEY and P. J. MARUTIAK,* JJ.

HOOD, J. Plaintiff appeals as of right from an order partially granting defendant's motion for summary judgment and a judgment which orders defendant to subtract or offset plaintiff's specific-loss workers' compensation benefits, MCL 418.361(2); MSA 17.237(361)(2), from the no-fault wage loss benefits defendant is obligated to pay plaintiff. MCL 500.3107(b); MSA 24.13107(b).

The undisputed facts are that plaintiff suffered a severe injury to his left eye in a work-related accident on July 27, 1979. He has a permanent loss of 90% of the vision in that eye. Plaintiff received a favorable decision from the Bureau of Workers' Disability Compensation which awarded him specific-loss benefits of $161 per week for 162 weeks from and after August 2, 1979. MCL 418.361(2)(1); MSA 17.237(361)(2)(1). Plaintiff is entitled to work-loss benefits from defendant under the no-fault act, MCL 500.3107(b); MSA 24.13107(b), due to the nature of his work-related injury. Defendant set off the amount plaintiff received in specific-loss benefits from its payment of work-loss benefits.

* Circuit judge, sitting on the Court of Appeals by assignment.

The no-fault act provides that, "[b]enefits provided or required to be provided under the law of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury". MCL 500.3109(1); MSA 24.13109(1). The work-loss benefits payable to plaintiff are personal protection insurance benefits. MCL 500.3107; MSA 24.13107. The work-loss benefits cover loss of income an injured person would have recieved absent the injury caused by a motor vehicle accident. MCL 500.3107(b); MSA 24.13107(b). General workers' disability compensation benefits must be deducted from work-loss benefits because they duplicate in varying degrees the work-loss benefits due. *Mathis v Interstate Motor Freight System,* 408 Mich 164, 187; 289 NW2d 708 (1980).

The only issue presented in this case is whether scheduled specific-loss benefits under the Worker's Disability Compensation Act must be set off against no-fault wage-loss benefits in the same manner as general workers' disability compensation benefits.

In *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), the Court stated a two-part test to determine whether state or federal benefits must be setoff from the no-fault benefits. First, the benefits must serve the same purpose as the no-fault benefits and second, the benefits must be required to be provided as a result of the same accident. The parties in this dispute agree that plaintiff's workers' compensation and no-fault work-loss benefits arise from the same accident. The question is whether specific-loss workers' compensation benefits duplicate work-loss benefits. To resolve this question "a particularized assessment * * * is necessary to identify the ultimate beneficiary, the nature of the benefits, the reason for

paying them, and the events triggering entitlement to them". *Jarosz,* p 580.

Plaintiff argues that specific-loss benefits, unlike general disability benefits, are paid for specific injuries or body losses without considering the beneficiary's loss of wage-earning capacity. See *Hutsko v Chrysler Corp,* 381 Mich 99, 102; 158 NW2d 874 (1968). Moreover, specific-loss benefits must be paid even if the claimant actually earns wages after the injury. Therefore, plaintiff argues that specific-loss benefits cannot be considered income replacement like general workers' compensation benefits. Thus, specific-loss workers' compensation benefits do not duplicate no-fault work-loss benefits and cannot be deducted from the no-fault benefits.

We disagree. The objective of the WDCA is to compensate a claimant for the loss of an earning capacity caused by a work-related injury. *Lahay v Hastings Lodges No 1965 BPOE,* 398 Mich 467, 479; 247 NW2d 817 (1976); *Bauer v Allied Supermarkets Inc,* 139 Mich App 369; 362 NW2d 283 (1984). Thus, to receive general benefits under the WDCA, a claimant must show not only a work-related injury, but that the injury causes a disability that impairs earning capacity. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 251-252; 262 NW2d 629 (1978); *Bauer, supra.*

Although a claimant of specific-loss benefits does not need to show an earning impairment to receive scheduled benefits, we cannot find that the purpose of scheduled benefits conflicts with the primary objective of the WDCA. Rather, we conclude that the specific-loss injuries enumerated in § 361 create a conclusive presumption of earning impairment. See *Magreta v Ambassador Steel Co,* 378 Mich 689, 696; 148 NW2d 767 (1967). We so find because the recipient of specific-loss benefits

cannot receive general disability benefits for that work-related injury at the same time. Rather, after the specified period has run the specific-loss recipient must apply for general disability compensation and show a wage-earning impairment due to the initial injury in order to continue to receive workers' compensation benefits. See *Kidd v General Motors Corp*, 414 Mich 578; 327 NW2d 265 (1982). Furthermore, § 361 requires that specific-loss benefits be computed in the same fashion as general disability benefits: on the basis a pre-injury earnings. MCL 418.361(2); MSA 17.237(361)(2). Moreover, a conclusive presumption of loss of earning capacity is justified because of the gravity of the injuries considered under § 361 and because the conspicuousness of those injuries indicates that such awards could be made without controversy. See, 2 Larson, Workmen's Compensation Law, §§ 57.14(c), 58.11, pp 10-36 and 10-173 to 10-174. See also, *Van Dorpel v Haven-Busch Co*, 350 Mich 135, 144; 85 NW2d 97 (1957).

We are convinced that income replacement remains the major function of specific-loss benefits, and, therefore, the no-fault setoff applies. We so find even if the specific-loss benefits might have a purpose broader than only wage-loss replacement.[1] We do not interpret the *Jarosz* "same purpose" test to require that the purpose be entirely coincident. This result is consonant with the legislative scheme of the no-fault act as explained in *Great American Ins Co v Queen*, 410 Mich 73, 95; 300 NW2d 895 (1980):

"Permitting employees to receive full no-fault benefits

---

[1] Some cases suggest that specific-loss benefits might compensate beneficiaries for pain and suffering or some other loss in addition to wage loss. See *Redfern v Sparks-Withington Co*, 403 Mich 63, 81-82, fn 15; 268 NW2d 28 (1978), and *Great American Ins Co v Queen*, 410 Mich 73, 91; 300 NW2d 895 (1980).

is one thing, but permitting such recovery in addition to workers' compensation benefits would be quite another. The Legislature therefore provided that workers' compensation benefits are to be subtracted from no-fault benefits otherwise payable. The provision which requires this subtraction applies to all benefits paid under state or federal law and expresses a legislative decision to forbid double recovery under government programs and to allocate the cost of providing the minimum level of benefits mandated by the no-fault act as much as possible to other sources."

Affirmed.